DELLA PARKS v. GRAND FOUNTAIN U. O. T. R. ET AL.

**Property in Name of Branch Organization Subject to Claims of Beneficiaries of Parent Society.**

When a subsidiary body is officered by the same officers as those who control and dominate the parent body, and has as its purpose the rendering of assistance to the parent body, and its purpose and character has always been so understood by all the members of the parent body and has always been so declared and those who became members of the parent organization did so in the belief that it embraced this subsidiary property in the hands of a receiver and standing in the name of the subsidiary will be administered for the benefit of the parent body.

APPEAL.

*William C. Lambert,* for plaintiff.

*Chas. Broadwell* and *Johnson & Levy,* for defendants.

## JONES (E. H.), J.

The petition in this case avers that the Grand Fountain of the United Order of True Reformers is a corporation under the laws of Virginia, and that the other defendant, the Reformers Mercantile & Industrial Assn., is also a corporation under the laws of Virginia and is an allied or subsidiary corporation, being under the control and management of the Grand Fountain U. O. T. R.; that the latter is a fraternal beneficial association of colored people with members all over the United States, divided into divisions and lodges, and that in consideration of dues paid by its members at regular specified times it pays to them sick

benefits and also issues death certificates providing for the payment of a stipulated sum upon the death of the member named therein.

Plaintiff, Della Parks, being the beneficiary named in one of these certificates issued to Rose Lee Parks, deceased, recovered a judgment before a justice of the peace against the Grand Fountain upon said certificate for the sum of $139 and costs. She says that said judgment is in full force and effect and is unpaid. She also says that within the jurisdiction of this court alone there are, according to her information, a number of persons who are in the same situation as herself and who are beneficiaries named in certificates held by deceased members of the order; that some of these have recovered judgments on their claims, all of which are unsatisfied and unpaid. She further avers that the said beneficial society is in the hands of receivers; that its affairs are in a tangled condition and that some of its principal officers are under indictment on the charge of misapplying the funds of said defendant in the state of Virginia; that on February 20, 1902, the Grand Fountain purchased certain real estate in the city of Cincinnati; that the title of said real estate was fraudulently put in the name of the defendant, the Reformers M. & I. Assn., and that in fact said real estate always was and now is the property of the Grand Fountain. Plaintiff, Della Parks, prays that said real estate be subjected to the payment of said judgment; that it be sold if necessary and out of the proceeds the judgment of the plaintiff be paid, and for such other and further relief as she may be entitled to.

The case is here on appeal from the judgment of the common pleas court, and was heard by this court on the oral evidence and numerous exhibits, and was submitted on arguments and briefs.

We think the evidence fully supports the claim of the plaintiff set out in her petition that the Grand Fountain U. O. T. R. is insolvent.

In support of the claim that the property described in the petition, located in Cincinnati, was owned by the Grand Fountain U. O. T. R., and not by the defendant, the Reformers M. & I. Assn., a great number of books and records of the Grand Fountain were offered in evidence. These books consist of the

minutes of the annual session of the Grand Fountain U. O. T. R., beginning with the year 1902, down to the year 1908; also, a history of twenty-five years of the order, guidebooks, pamphlets and other literature disseminated by the officers of the Grand Fountain. Throughout these books and reports it appears that the officers of the Grand Fountain were also the officers of the Reformers M. & I. Assn.; that the Reformers M. & I. Assn. was promoted and organized by the officers and members of the Grand Fountain; that it was controlled and dominated entirely by the members and officers of the Grand Fountain and was advertised in their literature as a subsidiary organization of the Grand Fountain.

It further appears from these records that the officers of the Grand Fountain, also the officers of the Reformers M. & I. Assn., including the Grand Worthy Master, as president of the organization, made repeated statements to the local members of the Grand Fountain of Cincinnati that the property involved in the controversy in this cause was to constitute a home for them and all the order of the Grand Fountain, and that these representations were made as inducements to secure colored people in this city to become members of the Grand Fountain.

Without undertaking to set out the numerous statements and the evidence in this case, we have come to the conclusion that the property located in Cincinnati, the title of which appears to be in the name of the Reformers M. & I. Assn., is really held in trust by that organization for the use and benefit of the Grand Fountain and its members; that this subsidiary organization, the Reformers M. & I. Assn., was incorporated and organized solely for the purpose of aiding and assisting the members of the Grand Fountain and to facilitate the transaction of its business and to divide up the work which was to be accomplished by the parent body. In the numerous pamphlets put out by the parent body and in the minutes of the annual session it is shown that the parent organization consists of eight subdivisions or branches, the first being subordinate Fountains, and other subordinate branches being the savings bank, the real estate department and lastly the Reformers M. & I. Assn.

It further appears from the evidence in the case that other property which belonged to the parent body was bought and the

Parks v. Grand Fountain U. O. T. R.

title placed in the name of the subsidiary organization. For example, in 1903, the worthy grand master of this order, who was the chief executive and controlling spirit of the organization, reported that he had purchased fifty-four acres of land on the James river in Virginia, and that he had put the title of the property in the Reformers M. & I. Assn., and that the property belonged to the parent body of the Grand Fountain. The same year and in the same report he gave a detailed statement of how he had purchased the Cincinnati property, and, among other things, stated that there had been donated by the votes of the directors of the Grand Fountain $40,000 to put up a building in St. Louis, but that he had purchased the property in St. Louis for $22,500, and had taken the balance left from the $40,-000 and purchased another piece of property in Louisville for $4,600, and had purchased the property in Cincinnati for $7,000.

We think the evidence is overwhelming tending to show that notwithstanding the fact that the title was taken in the name of the Reformers M. & I. Assn., it was nevertheless purchased for the parent body and it was so understood by all of the members of the organization. Such being the fact, we conclude that the members of the organization of the Grand Fountain who are residents of this city have a right to look to this property in Cincinnati to secure the payment of the claims which they have against this organization. The mere fact that the Reformers M. & I. Assn. is a separate organization from that of the Grand Fountain will not prevent the application of equitable principles to the facts in this case. It has been held repeatedly by the courts that a corporation is a legal entity apart from the natural persons who compose it, but that this legal entity is a mere fiction introduced for convenience in the transaction of its business and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, the fiction may be disregarded. *State* v. *Standard Oil Co.*, 49 Ohio St., 137 [30 N. E. 279; 15 L. R. A. 145; 34 Am. St. 541] ; *Brundred* v. *Rice,* 49 Ohio St., 640 [32 N. E. 169; 34 Am. St. 589].

In *First Nat. Bank* v. *Trebein,* 59 Ohio St., 316, 326 [52 N. E. 834], the Supreme Court, in speaking of the manner in which courts would look at the corporate entity of a corporation, says:

"The fiction by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application as frequently to induce the belief that it must be universal, and be, in all cases, adhered to, although the greatest frauds may thereby be perpetrated under the fictions as a shield. But modern cases, sustained by the best text-writers, confine the fiction to the purposes for which it was adopted— convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members; and have repudiated it in all cases where it has been insisted on as a protection to fraud or any other illegal transaction.''

It can not be doubted, from a perusal of the evidence in this case, that this subsidiary organization, the Reformers' M. & I. Assn., was organized purely and simply as an aid to the parent body, officered by the same officers as those controlling and dominating the parent body and for the purpose of assisting the members of the parent body. It was considered by all of the members of the organization and all of its officers, and so stated time and again in their utterances before the delegates in their annual session, that these organizations were all part and parcel of one Grand Fountain U. O. T. R. Those who became members of this organization in Cincinnati did so upon the belief and understanding that this great organization embraced all the subsidiary organizations and branches known as subsidiary branches. In truth and in substance the real company was the Grand Fountain U. O. T. R. and it dominated and controlled all the other branches and organizations.

In view of this conclusion we are of the opinion that a decree should be entered in this case in accordance with the prayer of the petition of the plaintiff, and that this property in Cincinnati, now in the hands of a receiver, should be held and administered for the benefit of the members of this Grand Fountain who are citizens and residents of Hamilton county, Ohio, who may have come in or may hereafter come in and ask to participate in the benefits which they claim in this property.

JONES (O. B.) and GORMAN, JJ., concur.